FILED
CLERK, U.S. DISTRICT COURT

**6/3/2025**

CENTRAL DISTRICT OF CALIFORNIA
BY: ___MMC___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2024 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>ARA ARTUNI,<br>  aka "Ara Harutyunyan,"<br>  aka "Aro,"<br>  aka "Araboyi,"<br>  aka "Arabo,"<br>  aka "Santos,"<br>ALEX AGOPIAN,<br>  aka "Alik,"<br>DAVIT HAZRYAN,<br>  aka "Davo,"<br>  aka "Dav,"<br>  aka "D,"<br>VAHAGN STEPANYAN,<br>  aka "Vee,"<br>  aka "Vova Titov,"<br>  aka "Juha Alver,"<br>  aka "Vahan Stephanian,"<br>  aka "Aso Balvanov,"<br>ARVIN ALBERT KAZARYAN,<br>  aka "Artur,"<br>  aka "Art,"<br>AREG BEZIK,<br>  aka "Elvis Narek,"<br>  fka "Narek Bezikian,"<br>MANUK MANUKYAN,<br>LEVON ARAKELYAN, and<br>CHRISTIAN SEDANO,<br>  aka "Bugsee," | CR  2:25-CR-00434-JLS<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. §§ 1959(a)(3), (a)(5): Violent Crimes in Aid of Racketeering Activity; 18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud and Bank Fraud; 18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 922(g)(1), (g)(5)(A): Prohibited Person in Possession of Firearms and Ammunition; 18 U.S.C. § 922(o)(1): Possession of Machineguns; 26 U.S.C. § 5861(d): Possession of Unregistered Firearms; 26 U.S.C. § 5861(i): Possession of Firearms Not Identified by a Serial Number; 18 U.S.C. § 1963, 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982, 28 U.S.C. § 2461(c), 18 U.S.C. § 924(d), 26 U.S.C. § 5872: Criminal Forfeiture] |

1        Defendants.

2

3        The Grand Jury charges:

4                         INTRODUCTORY ALLEGATIONS

5        At times relevant to this Indictment:

6    A.    ARMENIAN ORGANIZED CRIME IN LOS ANGELES COUNTY

7        1.    Armenian Organized Crime, also referred to as the Armenian
8    Mafia, originated in the former Union of Soviet Socialist Republics
9    (the "USSR") and following the Cold War, existed under the control of
10   the Russian Mafia (Russian: русская мафия, Romanized: *Russkaya*
11   *Mafiya*), also known as ("aka") *Bratva* (Russian: Братва, English:
12   brotherhood or band of brothers).

13       2.    Armenian Organized Crime comprised senior leaders, members,
14   and associates who resided in modern-day Russia and Armenia, as well
15   as other countries, including France, Spain, Iran, and the United
16   States.   In the United States, most Armenian Organized Crime leaders,
17   members, and associates resided in Los Angeles County, which
18   contained one of the largest Armenian populations outside of Russia
19   and Armenia.

20       3.    Armenian Organized Crime followed a "flat" or "flattened"
21   organizational structure, in contrast to its traditional, strict,
22   linear one where each member carried a specific title or rank and
23   there was a clear, designated chain of command.   In Los Angeles
24   County, this organizational restructuring led to the creation of
25   decentralized, hybrid crime crews that included Armenian Organized
26   Crime members as well as non-member and/or non-Armenian criminals.

27       4.    When residing outside of the former USSR and its
28   surrounding territories, Armenian Organized Crime groups camouflaged

2

themselves amongst expatriate and immigrant Armenian communities and used these communities as bases to establish Armenian criminal organizations internationally.  A hallmark of Armenian Organized Crime was the strategic use of violence to send a message, increase an individual's position within the Armenian criminal community, and/or leverage a business interest.  To avoid law enforcement detection, Armenian Organized Crime often assigned these acts of violence to non-Armenian criminal associates, such as members of black and *Sureño* street gangs.

    5.    Power and leadership in Armenian Organized Crime was based, among other things, on a combination of respect, seniority, that is, physical age, authority within the Russian Mafia, and relatedly, authority and influence within the Armenian criminal community. Traditionally, Armenian Organized Crime members and associates reported to a specific, high-level male crime boss who was born either in Armenia or a country that was formerly part of the USSR. In Armenian Organized Crime, this crime boss was known as a "*orenk'ov gogh*" (Armenian: օրենքով գող, English: "thief in law") or "*gogh*" for short.  Colloquially, *goghs* were also referred to as "*kerop*" (or "*qerop*"), which is Armenian slang for both "made man" and "wise guy." A *gogh* could not be crowned, that is, named or appointed, without the blessing and/or approval of the Russian Mafia.

    6.    Under each *gogh*, there were multiple elders who each controlled their own organized crime group.  The elders were the direct connection to the *gogh*, and they were responsible for meting out tasks or giving orders to the members and associates of their respective group.  In essence, the elders were responsible for controlling the day-to-day and street-level criminal activity in

3

their groups.  Under each elder, there were assorted members and/or non-member associates with authority and influence within the Armenian criminal community.

7.    Armenian Organized Crime also included individuals of influence called "*avtoritet*" (Russian: авторитет, English: person of significant authority) who commonly controlled their own crime groups.  Though revered in the Armenian criminal community, *avtoritet*, unlike *goghs*, were not crowned by the Russian Mafia. Nevertheless, *avtoritet* had reputations and were notorious in, among other places, the Armenian criminal underworld.  In Los Angeles County, *avtoritet* commonly operated independently and led their own organized crime groups, thereby wielding power over Armenian criminal organizations, including Armenian Organized Crime, the Armenian Power criminal street gang, and non-member Armenians who committed crimes.

B.    <u>THE ENTERPRISE</u>

8.    Defendants ARA ARTUNI, also known as ("aka") "Ara Harutyunyan," "Aro," "Araboyi," "Arabo," and "Santos," ALEX AGOPIAN, aka "Alik," DAVIT HAZRYAN, aka "Davo," "Dav," and "D," VAHAGN STEPANYAN, aka "Vee," "Vova Titov," "Juha Alver," "Vahan Stephanian," and "Aso Balvanov," ARVIN ALBERT KAZARYAN, aka "Artur" and "Art," AREG BEZIK, aka "Elvis Narek" and formerly known as "Narek Bezikian," MANUK MANUKYAN, LEVON ARAKELYAN, and CHRISTIAN SEDANO, aka "Bugsee," and others known and unknown to the Grand Jury, were members and associates of a criminal organization (the "Artuni Enterprise") that engaged in, among other things, acts involving murder, theft from interstate shipments, bank and wire fraud, and forgery and false use of a passport.

9.    The Artuni Enterprise was an Armenian Organized Crime group that operated in Los Angeles County and elsewhere with defendant ARTUNI at the helm.  As an *avtoritet*, defendant ARTUNI commanded respect and occupied a position of power within the Armenian criminal community in the greater Los Angeles area.  Typical of the flat Armenian Organized Crime structure, defendant ARTUNI loosely commanded Armenian members of his organization, and he had non-Armenian criminal associates recruited for the purpose of committing crimes at his behest.

10.    The Artuni Enterprise, including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce.  The Artuni Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

C.    PURPOSES OF THE ENTERPRISE

11.    The purposes of the Artuni Enterprise included, but were not limited to, the following:

        a.    Enriching members and associates of the Artuni Enterprise through, among other things, the theft of interstate shipments and the commission of fraud in Los Angeles County and elsewhere;

        b.    Establishing control over Armenian communities within Los Angeles County;

1              c.    Preserving, protecting, and expanding the power of the

2   Artuni Enterprise using intimidation, violence, and threats of

3   violence; and

4              d.    Violently retaliating against rival Armenian Organized

5   Crime groups or other members of the Armenian criminal community who

6   challenged the Artuni Enterprise's authority or attempted to encroach

7   upon the Artuni Enterprise's sphere of influence.

8   D.    MEANS AND METHODS OF THE ENTERPRISE

9        12.    The means and methods by which the members and associates

10   of the Artuni Enterprise conducted and participated in the conduct of

11   the affairs of the Artuni Enterprise included, but were not limited

12   to, the following:

13             a.    Members and associates of the Artuni Enterprise stole

14   from interstate shipments and committed fraud to generate revenue for

15   the enterprise.

16             b.    Members and associates of the Artuni Enterprise

17   promoted a climate of fear through acts of violence and threats to

18   commit acts of violence.

19             c.    Members and associates of the Artuni Enterprise

20   committed, attempted to commit, conspired to commit, and threatened

21   to commit acts of violence, including assault and murder, to

22   preserve, protect, and expand the Artuni Enterprise's operations.

23   E.    THE DEFENDANTS

24        13.    Defendant ARTUNI, a self-reported Iranian citizen, person

25   of Armenian descent, and resident of the Central District of

26   California, was an *avtoritet* within the Armenian organized crime

27   community and led his own organized crime group (the Artuni

28   Enterprise).

6

14.   Defendant AGOPIAN, a self-reported Azerbaijanian citizen and person of Armenian descent, was a member and associate of the Artuni Enterprise and a resident of the Central District of California.

15.   Defendant HAZRYAN, a naturalized United States citizen who was born in Armenia, was a member and associate of the Artuni Enterprise and a resident of the Central District of California.

16.   Defendant STEPANYAN, a derivative United States citizen who self-reported being born in the USSR and was a person of Armenian descent, was a member and associate of the Artuni Enterprise and a resident of the Central District of California.

17.   Defendant KAZARYAN, a natural-born United States citizen and person of Armenian descent, was a member and associate of the Artuni Enterprise and a resident of the Central District of California.

18.   Defendant BEZIK, a self-reported Iranian citizen and person of Armenian descent, was a member and associate of the Artuni Enterprise and a resident of the Central District of California.

19.   Defendant MANUKYAN, a self-reported citizen of the former USSR and person of Armenian descent, was an associate of the Artuni Enterprise and a resident of the Central District of California.

20.   Defendant ARAKELYAN, a self-reported citizen of the former USSR and person of Armenian descent, was an associate of the Artuni Enterprise and a resident of the Central District of California or imprisoned in the District of Nevada.

21.   Defendant SEDANO, a natural-born United States citizen, was an associate of the Artuni Enterprise and a resident of the Central District of California.

7

22.    The Grand Jury realleges these Introductory Allegations in each count of this Indictment.

COUNT ONE

[18 U.S.C. § 1962(d)]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, KAZARYAN, BEZIK, MANUKYAN, AND SEDANO]

A.   THE RACKETEERING CONSPIRACY

23.   Beginning no later than in or around 2015, and continuing to in or around May 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, KAZARYAN, BEZIK, MANUKYAN, and SEDANO, and others known and unknown to the Grand Jury, each being a person employed by and associated with the Artuni Enterprise, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Artuni Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), which pattern of racketing consisted of:

a.   Multiple acts involving murder, chargeable under California Penal Code Sections 21a, 31, 182, 187, 188, 189, and 664; and

b.   Multiple acts indictable under:

i.   Title 18, United States Code, Section 659 (relating to theft from interstate shipments where the act indictable under the section is felonious);

ii.   Title 18, United States Code, Section 1343 (relating to wire fraud);

9

1            iii. Title 18, United States Code, Section 1344

2 (relating to financial institution fraud); and

3            iv.  Title 18, United States Code, Section 1543

4 (relating to forgery or false use of a passport).

5     24.  It was part of the conspiracy that each defendant agreed

6 that a co-conspirator would commit at least two acts of racketeering

7 in the conduct of the affairs of the Artuni Enterprise.

8 B.  <u>MANNER AND MEANS OF THE CONSPIRACY</u>

9     25.  The object of the conspiracy was to be accomplished, in

10 substance, as follows:

11       a.   Defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, and

12 SEDANO, and others known and unknown to the Grand Jury, would direct,

13 coordinate, assist in, or otherwise contribute to, the commission of

14 violent crimes, including murder, attempted murder, and assault with

15 a deadly weapon, to preserve and expand the power of the Artuni

16 Enterprise.

17       b.   Defendants STEPANYAN and SEDANO, and others known and

18 unknown to the Grand Jury, would store and possess firearms and

19 ammunition for the purpose of committing violent crimes on the Artuni

20 Enterprise's behalf.

21       c.   Defendants HAZRYAN, STEPANYAN, KAZARYAN, BEZIK, and

22 SEDANO, and others known and unknown to the Grand Jury, would execute

23 and attempt to execute financial crimes, including fraud related to

24 financial institutions and the wires, the proceeds of which would be

25 paid to members and associates of the Artuni Enterprise.

26 Specifically:

27         i.   Defendant HAZRYAN and others known and unknown to

28 the Grand Jury would process credit card payments from willing

participants, including defendants STEPANYAN and SEDANO, and others known and unknown to the Grand Jury, to pay for purported moving services provided by a company controlled by defendant HAZRYAN.  In reality, no moving services had been provided, and the credit cards were used to transfer funds from the credit card issuers -- whose accounts were insured by the Federal Deposit Insurance Corporation -- into bank accounts controlled by members of the conspiracy, including an account at Chase Bank (the "Chase Bank Account").

   ii.  Once credit card payments were made, defendants AGOPIAN, HAZRYAN, BEZIK, and SEDANO, and others known and unknown to the Grand Jury, would drain the Chase Bank Account by (i) issuing checks, which were later deposited into different bank accounts or cashed; (ii) transferring the funds to a linked, external account; or (iii) wiring the money to an external account for the benefit of the co-conspirators and others.

   iii. To maintain the scheme and maximize its profitability, the cardholders would dispute the transactions with the credit card issuers in order to have the charges removed from their balances.

   d.  Defendant BEZIK, and others known and unknown to the Grand Jury, would masquerade as a legitimate member of Amazon.com, Inc.'s freight network to effectuate the theft of Amazon shipments, store the stolen Amazon products in a warehouse accessed by defendants ARTUNI, HAZRYAN, KAZARYAN, himself, and others known and unknown to the Grand Jury, and distribute the proceeds to members and associates of the Artuni Enterprise.

   e.  Defendants HAZRYAN, KAZARYAN, BEZIK, MANUKYAN, and others known and unknown to the Grand Jury, would obtain motor

11

vehicles to be used by members and associates of the Artuni
Enterprise in furtherance of the enterprise's racketeering
activities.

C.    OVERT ACTS

26.   In furtherance of the racketeering conspiracy, and to
accomplish its objects, on or about the following dates, defendants
ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, KAZARYAN, BEZIK, MANUKYAN, and
SEDANO, together with others known and unknown to the Grand Jury,
committed and willfully caused to be committed various overt acts
within the Central District of California and elsewhere, including,
but not limited to, the following:

**July 21, 2020: Shooting Targeting Victims 1 and 2 in Burbank,**

**California**

Overt Act No. 1:   On or before June 30, 2020, defendant
STEPANYAN purchased a prepaid cellular phone that he registered under
the alias "Vova Titov" and used to communicate with a co-conspirator
who was a documented member of Psycho Ass Life ("PAL"), a *Sureño*
street gang ("CC-1").

Overt Act No. 2:   On June 30, 2020, in a series of text
messages using coded language, defendant STEPANYAN asked CC-1 to
contact him and informed CC-1 that he would provide him with clothes.

Overt Act No. 3:   On July 2, 2020, via text message, defendant
STEPANYAN and CC-1 communicated regarding the latter's location.

Overt Act No. 4:   On July 2, 2020, CC-1 photographed a picture
depicting Victim 1.

Overt Act No. 5:   On July 10, 2020, defendant STEPANYAN
traveled to or near Victim 1 and 2's residence in Burbank,
California.

1       <u>Overt Act No. 6:</u>    On July 13, 2020, defendant STEPANYAN

2   traveled to or near Victim 1 and 2's residence.

3       <u>Overt Act No. 7:</u>    On July 16, 2020, defendant STEPANYAN and

4   CC-1 met in person at Burger King in Glendale, California.

5       <u>Overt Act No. 8:</u>    On July 17, 2020, via text message and using

6   coded language, CC-1 asked if defendant STEPANYAN could provide him

7   with a vehicle.

8       <u>Overt Act No. 9:</u>    On July 17, 2020, via text message and using

9   coded language, defendant STEPANYAN instructed CC-1 to take care of

10  the vehicle defendant STEPANYAN provided him.

11      <u>Overt Act No. 10:</u>    On July 18, 2020, CC-1 traveled to or near

12  Victim 1 and 2's residence.

13      <u>Overt Act No. 11:</u>    On July 18, 2020, via text message and using

14  coded language, CC-1 informed defendant STEPANYAN that he decided not

15  to attempt to murder Victim 1 that evening.

16      <u>Overt Act No. 12:</u>    Between July 20 and July 21, 2020, CC-1

17  traveled to Victim 1 and 2's residence in a black Mercedes-Benz

18  bearing two stolen license plates.

19      <u>Overt Act No. 13:</u>    On July 21, 2020, CC-1 broke into Victim 1

20  and 2's residence.

21      <u>Overt Act No. 14:</u>    On July 21, 2020, CC-1, using a Polymer80

22  PB94DC 9mm firearm bearing no serial number (commonly referred to as

23  a "ghost gun") with a silencer attached (the "Polymer80"), shot and

24  killed Victim 1 while he was in bed with his wife (Victim 2).

25      <u>Overt Act No. 15:</u>    On July 21, 2020, CC-1, using the Polymer80,

26  shot Victim 2 multiple times while she was in bed with Victim 1,

27  causing her serious bodily injury.

28

1      Overt Act No. 16:   On July 21, 2020, via text message and using
2  coded language, defendant STEPANYAN checked on CC-1's status.

3      Overt Act No. 17:   Between July 20 and July 22, 2020, after the
4  shooting that killed Victim 1 and seriously injured Victim 2,
5  defendant AGOPIAN obtained a new cellphone number ending in -1313.

6      Overt Act No. 18:   On July 22, 2020, via text message, in
7  Armenian, and using coded language, defendant AGOPIAN, using his new
8  number ending in -1313, told defendant ARTUNI to text like everything
9  was normal, which defendant ARTUNI agreed to do.

10      Overt Act No. 19:   On July 23, 2020, defendant STEPANYAN
11  stopped using the prepaid cellular phone that he had registered under
12  the alias "Vova Titov."

13      **June 12, 2023: Shooting Targeting Victim 3 in Los Angeles**

14      Overt Act No. 20:   On a date before June 12, 2023, defendant
15  KAZARYAN, and others known and unknown to the Grand Jury, leased a
16  blue BMW X6 M50 (the "BMW X6") for defendant BEZIK and registered the
17  vehicle in defendant KAZARYAN's father's name.

18      Overt Act No. 21:   On June 12, 2023, defendant HAZRYAN traveled
19  to or near a residence in Van Nuys, California where Victim 3 was
20  located.

21      Overt Act No. 22:   On June 12, 2023, defendant ARTUNI traveled
22  to or near a residence in Van Nuys where Victim 3 was located.

23      Overt Act No. 23:   On June 12, 2023, defendant HAZRYAN traveled
24  to or near a Shell Gas Station in Reseda, California where Victim 3
25  was parked.

26      Overt Act No. 24:   On June 12, 2023, defendant STEPANYAN turned
27  off or stopped using his cellular phone so that it would stop
28  reporting Global Positioning System ("GPS") location data.

Overt Act No. 25:    On June 12, 2023, a member of the conspiracy driving the BMW X6 and a member of the conspiracy driving a GMC Acadia SUV (the "GMC SUV") trailed and surveilled Victim 3 as Victim 3 traveled in and around the greater Los Angeles area.

Overt Act No. 26:    On June 12, 2023, a member of the conspiracy drove in front of Victim 3's vehicle in the BMW X6 and purposely caused Victim 3 to slow down at an intersection on Melvin Avenue and Devonshire Street in the San Fernando Valley.

Overt Act No. 27:    On June 12, 2023, a member of the conspiracy drove alongside Victim 3's vehicle in the GMC SUV, as Victim 3 slowly turned on to Melvin Avenue.

Overt Act No. 28:    On June 12, 2023, a member of the conspiracy in the GMC SUV, using a handgun, fired approximately eight rounds of Federal .45 caliber ammunition at Victim 3's vehicle from the GMC SUV, hitting the driver's side door approximately seven times.

Overt Act No. 29:    On June 12, 2023, members of the conspiracy fled from the intersection in the BMW X6 and GMC SUV.

Overt Act No. 30:    On June 12, 2023, following the shooting, defendant HAZRYAN fled to a location in Tujunga, California.

Overt Act No. 31:    On June 12, 2023, following the shooting, defendant ARTUNI fled to a location in Tujunga.

Overt Act No. 32:    Beginning on an unknown date and continuing to December 12, 2023, defendant HAZRYAN possessed aerial drone footage dated August 8, 2023, depicting Victim 3's residence on an iPhone 15 Pro ("iPhone 15 Pro").

**July 7, 2023: Shooting Targeting Victims 4 and 5 in Burbank**

Overt Act No. 33:    On July 2, 2023, defendant HAZRYAN traveled to or near Victim 4 and 5's residence.

15

1    <u>Overt Act No. 34:</u>    Between July 4 and July 9, 2023, defendant
2  HAZRYAN met with defendant ARTUNI at the latter's residence in
3  Tujunga multiple times.

4    <u>Overt Act No. 35:</u>    Beginning on an unknown date and continuing
5  to December 12, 2023, defendant ARTUNI possessed screenshots of a
6  background check for Victim 4, which included a map depicting Victim
7  4 and 5's home address in Burbank, on an iPhone 14 Pro ("iPhone 14
8  Pro").

9    <u>Overt Act No. 36:</u>    On July 7, 2023, defendant SEDANO obtained a
10  Google Street View image of the alleyway behind Victim 4 and 5's
11  residence, which depicted Victim 4 and 5's balcony.

12    <u>Overt Act No. 37:</u>    On July 7, 2023, defendants ARTUNI and
13  HAZRYAN traveled together in and around the greater Los Angeles area,
14  including to a tire shop in Vernon, California (the "Tire Shop").

15    <u>Overt Act No. 38:</u>    On or before July 7, 2023, defendant
16  MANUKYAN obtained a fraudulent United States Passport Card depicting
17  his likeness and bearing the alias "Briedis Malone."

18    <u>Overt Act No. 39:</u>    On July 7, 2023, using the fraudulent
19  passport card, defendant MANUKYAN purchased a red lifted Ford F-150
20  (the "F-150") for approximately $7,000 in cash at the Tire Shop.

21    <u>Overt Act No. 40:</u>    On July 7, 2023, defendant STEPANYAN
22  traveled to a storage facility in Sun Valley, California (the
23  "Storage Facility").

24    <u>Overt Act No. 41:</u>    On July 7, 2023, defendant STEPANYAN
25  traveled on the 5 freeway towards Burbank, California.

26    <u>Overt Act No. 42:</u>    On July 7, 2023, defendants ARTUNI,
27  STEPANYAN, and SEDANO either turned off or stopped using their
28  cellular phones so that they would stop reporting GPS location data.

16

Overt Act No. 43:   On July 7, 2023, between approximately 10:14 p.m. and 10:31 p.m., defendants HAZRYAN and BEZIK called each other multiple times.

Overt Act No. 44:   On July 7, 2023, defendant HAZRYAN engaged Victim 4 on a Facetime call.

Overt Act No. 45:   On July 7, 2023, defendant HAZRYAN traveled to or near Victim 4 and 5's residence.

Overt Act No. 46:   On July 7, 2023, a member of the conspiracy drove the F-150 defendant MANUKYAN had purchased that same day down an alleyway and stopped the F-150 right in front of Victim 4 and 5's balcony.

Overt Act No. 47:   On July 7, 2023, a member of the conspiracy, using a Glock, model 21, .45 Auto caliber semi-automatic pistol bearing serial number KDK598 with an attached auto sear (the "Glock"), and a 10mm pistol-type gun with an attached auto sear, stood up in the bed of the F-150 and fired at least 18 rounds of Hornady 45 Auto and CCI NR 10mm Auto ammunition at the balcony where Victim 4 and his wife (Victim 5) were seated, striking Victim 4 multiple times and causing him serious bodily injury.

Overt Act No. 48:   On July 7, 2023, after the shooting, members of the conspiracy fled from Victim 4 and 5's residence.

Overt Act No. 49:   On July 7, 2023, at an intersection in Burbank, a member of the conspiracy exited the bed of the F-150 and entered defendant SEDANO's Toyota Camry.

Overt Act No. 50:   On July 7, 2023, after the shooting, defendant STEPANYAN returned to the Storage Facility.

Overt Act No. 51:   On July 7, 2023, after the shooting, defendants ARTUNI and HAZRYAN traveled to Porter Ranch, California.

17

    Overt Act No. 52:   On or after July 7, 2023, defendant HAZRYAN conducted an Internet search for "shooting in north Hollywood" on his iPhone 15 Pro.

    Overt Act No. 53:   On December 12, 2023, defendants STEPANYAN and SEDANO, and others known and unknown to the Grand Jury, possessed the Glock used in the shooting at Victim 4 and 5's residence, among other items, in Unit B16 at the Storage Facility.

**August 18, 2023: Shooting Targeting Victim 6 in North Hills, California**

    Overt Act No. 54:   On or before August 18, 2023, defendant ARTUNI obtained aerial drone footage dated July 30, 2023, depicting Victim 6's residence and saved it on his iPhone 14 Pro.

    Overt Act No. 55:   On August 18, 2023, defendant STEPANYAN traveled to or near Victim 6's residence in North Hills.

    Overt Act No. 56:   On August 18, 2023, defendants ARTUNI, STEPANYAN, KAZARYAN, and SEDANO either turned off or stopped using their cellular phones so that they would stop reporting GPS location data.

    Overt Act No. 57:   On August 18, 2023, defendant HAZRYAN traveled to or near Victim 6's residence in North Hills.

    Overt Act No. 58:   On August 18, 2023, a member of the conspiracy drove to Victim 6's residence on a motorcycle.

    Overt Act No. 59:   On August 18, 2023, a member of the conspiracy drove a pickup truck to Victim 6's residence.

    Overt Act No. 60:   On August 18, 2023, the member of the conspiracy who arrived on the motorcycle retrieved, among other items, a step ladder from the pickup truck, used the ladder to climb

18

up a wall surrounding Victim 6's residence, and fired approximately nine rounds of 7.62x39mm caliber ammunition at Victim 6's residence.

Overt Act No. 61:   On August 18, 2023, members of the conspiracy fled from Victim 6's residence.

Overt Act No. 62:   On August 18, 2023, defendant HAZRYAN remained near Victim 6's residence in North Hills, later leaving North Hills and arriving in Van Nuys over an hour later.

**August 25, 2023: Shooting Targeting Victims 4, 6, 7, and Others in North Hills**

Overt Act No. 63:   On August 25, 2023, defendant HAZRYAN drove defendants ARTUNI and AGOPIAN to the Storage Facility in a dark Nissan Infiniti QX80 SUV (the "Infiniti SUV") registered in defendant KAZARYAN's father's name.

Overt Act No. 64:   On August 25, 2023, defendant STEPANYAN drove a white Mercedes-Benz S-Class (the "Mercedes-Benz") to the Storage Facility.

Overt Act No. 65:   On August 25, 2023, defendant STEPANYAN exited the Mercedes-Benz and entered the Infiniti SUV, which was occupied by defendants ARTUNI, AGOPIAN, and HAZRYAN.

Overt Act No. 66:   On August 25, 2023, defendants STEPANYAN and AGOPIAN exited the Infiniti SUV and entered the Mercedes-Benz, with defendant STEPANYAN in the driver's seat, and left the Storage Facility.

Overt Act No. 67:   On August 25, 2023, defendants STEPANYAN and AGOPIAN returned to the Storage Facility in the Mercedes-Benz.

Overt Act No. 68:   On August 25, 2023, defendants ARTUNI, AGOPIAN, HAZRYAN, and STEPANYAN entered the Storage Facility, with

19

defendant STEPANYAN carrying a guitar case retrieved from the
Mercedes-Benz and headed to Unit B16.

Overt Act No. 69:   On August 25, 2023, defendants ARTUNI,
AGOPIAN, HAZRYAN, and STEPANYAN exited the Storage Facility, with
defendant AGOPIAN carrying the guitar case, now containing firearms,
which he then placed into the Mercedes-Benz.

Overt Act No. 70:   On August 25, 2023, defendant STEPANYAN left
the Storage Facility in the Mercedes-Benz.

Overt Act No. 71:   On August 25, 2023, defendants ARTUNI,
AGOPIAN, and HAZRYAN left the Storage Facility in the Infiniti SUV,
with defendant HAZRYAN in the driver's seat and defendants ARTUNI and
AGOPIAN seated as passengers.

Overt Act No. 72:   From August 25 to August 26, 2023, defendant
SEDANO either turned off or stopped using his cellular phone so that
it would stop reporting GPS location data.

Overt Act No. 73:   On August 25, 2023, defendant ARTUNI
traveled to or near Victim 6's residence.

Overt Act No. 74:   On August 25, 2023, defendant HAZRYAN
traveled to or near Victim 6's residence.

Overt Act No. 75:   On August 25, 2023, defendant STEPANYAN
traveled to or near Victim 6's residence.

Overt Act No. 76:   On August 25, 2023, defendant ARTUNI either
turned off or stopped using his cellular phone so that it would stop
reporting GPS location data.

Overt Act No. 77:   On August 25, 2023, a member of the
conspiracy drove a gray pickup truck to a location facing the
backyard of Victim 6's residence with two other members of the
conspiracy in the bed of the truck along with a guitar case.

20

Overt Act No. 78:    On August 25, 2023, a member of the conspiracy stood up in the bed of the pickup truck and, using a 5.56mm caliber rifle, fired at least 34 rounds of 5.56mm caliber ammunition into the backyard of Victim 6's residence where Victims 4, 6, 7, and others were congregated.

Overt Act No. 79:    On August 25, 2023, another member of the conspiracy, who was also in the bed of the pickup truck with a firearm, attempted to fire into the backyard of Victim 6's residence where Victims 4, 6, 7, and others were congregated.

Overt Act No. 80:    On August 25, 2023, after the shooting, the members of the conspiracy in the pickup truck fled from Victim 6's residence.

Overt Act No. 81:    On August 25, 2023, following the shooting, defendant HAZRYAN fled from the vicinity of Victim 6's residence, first to Granada Hills, California, and later to Porter Ranch.

Overt Act No. 82:    On August 25, 2023, after the shooting, defendant ARTUNI traveled to Northridge.

**November 9, 2023: Shooting Targeting Victim 8 in Los Angeles**

Overt Act No. 83:    On or before November 9, 2023, defendant ARTUNI advised Victim 8 that his associate would not be paying Victim 8 the money that Victim 8 believed he was owed.

Overt Act No. 84:    On March 3, 2023, a white Toyota Camry (the "white Camry") was purchased using the personal identifying information of a third party and registered to an address associated with defendant HAZRYAN in Glendale.

Overt Act No. 85:    On August 10, 2023, defendant HAZRYAN attempted to make a one-time payment of $1,230.30 from a Bank of America account in the name of a sham canine business controlled by

defendant HAZRYAN (DK9, Inc.) to Toyota Financial for the white Camry's lease.

Overt Act No. 86:   On November 9, 2023, defendant STEPANYAN arrived at the Storage Facility in the white Camry, carried a cardboard box inside, and headed toward Unit B16.

Overt Act No. 87:   On November 9, 2023, defendant STEPANYAN exited the Storage Facility carrying a black case, which he placed into the white Camry before departing the Storage Facility.

Overt Act No. 88:   On November 9, 2023, defendants ARTUNI and SEDANO either turned off or stopped using their cellular phones so that they would stop reporting GPS location data.

Overt Act No. 89:   On November 9, 2023, defendant HAZRYAN travelled to or near a Starbucks in Los Angeles.

Overt Act No. 90:   On November 9, 2023, defendant STEPANYAN, driving the white Camry, arrived at the Starbucks, pulled into the parking lot, and parked across from the vehicle in which Victim 8 was sitting.

Overt Act No. 91:   On November 9, 2023, a member of the conspiracy driving a tan-colored Nissan Armada entered the Starbucks parking lot and backed into an empty parking space in the parking lot.

Overt Act No. 92:   On November 9, 2023, defendant STEPANYAN accelerated through the Starbucks parking lot in the white Camry and departed.

Overt Act No. 93:   On November 9, 2023, a member of the conspiracy driving the Nissan Armada pulled out of the parking space and stopped, facing Victim 8's vehicle.

<u>Overt Act No. 94:</u>  On November 9, 2023, a member of the conspiracy, using a Century Arms, model C39v2, 7.62x39mm caliber rifle bearing serial number C39P2A01084 (the "Century Arms Rifle"), fired approximately six rounds of 7.62mm ammunition at Victim 8's vehicle, striking Victim 8 multiple times and causing him serious bodily injury.

<u>Overt Act No. 95:</u>  On November 9, 2023, after the shooting, a member of the conspiracy and defendant STEPANYAN drove in tandem while fleeing from the Starbucks.

<u>Overt Act No. 96:</u>  On November 9, 2023, defendant HAZRYAN fled to Tujunga.

<u>Overt Act No. 97:</u>  On November 10 and November 11, 2023, defendant HAZRYAN conducted the following Internet searches: "shooting in tujunga today," "Man shot in Tujunga," "shooting in tujunga star bucks," "SUNLAND-TUJUNGA AREA EMERGENCY POLICE-FIRE SCANNER NEWS," "Tujunga police activity today," and "Sunland tujunga police activity today."

<u>Overt Act No. 98:</u>  On December 12, 2023, defendants STEPANYAN and SEDANO, and others known and unknown to the Grand Jury, possessed the Century Arms Rifle in Unit B16 at the Storage Facility.

**Freedom At Enterprise, Inc. Credit Card Fraud Scheme**

<u>Overt Act No. 99:</u>  On July 8, 2015, a co-conspirator ("CC-2") incorporated Freedom At Enterprise, Inc., a purported moving company, in Delaware County, within the Eastern District of Pennsylvania, designating CC-2 as the agent in the State of Pennsylvania.

<u>Overt Act No. 100:</u>  On August 26, 2020, CC-2 incorporated Freedom At Enterprise, Inc. in Los Angeles County, within the Central

23

District of California, designating CC-2 as the agent in the State of
California.

    Overt Act No. 101:  On January 13, 2021, CC-2 opened a JPMorgan
Chase Bank ("Chase Bank") business checking account ending in -6361,
designating CC-2 as the account owner.

    Overt Act No. 102:  On October 10, 2023, a photograph of a Chase
Bank business debit card bearing CC-2's name was saved onto defendant
HAZRYAN's iPhone 15 Pro.

    Overt Act No. 103:  On October 10, 2023, photographs depicting a
printout listing first and last initials, phone numbers, email
addresses, credit card limits, and addresses for individuals,
including, but not limited to, defendants STEPANYAN and SEDANO, and
others known and unknown to the Grand Jury, were saved onto defendant
HAZRYAN's iPhone 15 Pro.

    Overt Act No. 104:  On an unknown date, a Google email address
was created for Freedom At Enterprise, Inc., which was managed and
controlled by defendant HAZRYAN.

    Overt Act No. 105:  On October 2, 2023, defendant HAZRYAN caused
a transfer of $5,000 from the Chase Bank Account into a Zelle account
he controlled.

    Overt Act No. 106:  On October 6, 2023, defendant HAZRYAN caused
a transfer of $600 from the Chase Bank Account into a Zelle account
he controlled.

    Overt Act No. 107:  On October 6, 2023, defendant AGOPIAN caused
a check for $8,000 from Freedom At Enterprise, Inc. to be deposited
into his Citibank, N.A. ("Citibank") account.

Overt Act No. 108:  On October 10, 2023, defendant HAZRYAN caused a transfer of $200 from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 109:  On October 10, 2023, defendant HAZRYAN caused a transfer of $700 from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 110:  On October 13, 2023, defendant HAZRYAN caused a transfer of $1,500 from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 111:  On October 16, 2023, defendant HAZRYAN caused a transfer of $900 from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 112:  On October 19, 2023, defendant HAZRYAN caused a transfer of $1,500 from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 113:  On October 19, 2023, defendant BEZIK caused a check for $20,860 from Freedom At Enterprise, Inc. to be cashed at A to Z Check Cashing in Glendale ("A to Z").

Overt Act No. 114:  On October 20, 2023, defendant BEZIK caused a check for $5,880 from Freedom At Enterprise, Inc. to be cashed at A to Z.

Overt Act No. 115:  On October 23, 2023, defendant HAZRYAN caused a transfer of $1,500 from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 116:  On October 24, 2023, defendant BEZIK caused a check for $37,635 from Freedom At Enterprise, Inc. to be cashed at A to Z.

1    Overt Act No. 117:  On October 26, 2023, defendant HAZRYAN

2    caused a transfer of $1,500 from the Chase Bank Account into a Zelle

3    account he controlled.

4    Overt Act No. 118:  On October 28, 2023, defendant BEZIK caused

5    a check for $8,100 from Freedom At Enterprise, Inc. to be cashed at A

6    to Z.

7    Overt Act No. 119:  On October 28, 2023, via text message using

8    coded language, defendant HAZRYAN sent a co-conspirator ("CC-3")

9    "Freedom at enterprise inc, $28150" and included the address for a

10   commercial mail receiving center in Burbank.

11   Overt Act No. 120:  On October 30, 2023, defendant HAZRYAN

12   caused a transfer of $1,000 from the Chase Bank Account into a Zelle

13   account he controlled.

14   Overt Act No. 121:  On November 1, 2023, defendant HAZRYAN

15   caused a transfer of $2,000 from the Chase Bank Account into a Zelle

16   account he controlled.

17   Overt Act No. 122:  On November 2, 2023, defendant BEZIK caused

18   a check for $51,783 from Freedom At Enterprise, Inc. to be cashed at

19   A to Z.

20   Overt Act No. 123:  On November 3, 2023, defendant HAZRYAN

21   caused a transfer of $2,000 from the Chase Bank Account into a Zelle

22   account he controlled.

23   Overt Act No. 124:  On November 3, 2023, defendant HAZRYAN

24   caused a transfer of $500 from the Chase Bank Account into a Zelle

25   account he controlled.

26   Overt Act No. 125:  On November 5, 2023, via text message,

27   defendant HAZRYAN sent himself a screenshot of a Quickbooks statement

28

26

1 for Freedom At Enterprise, Inc. from August 1 to August 31, 2023,

2 indicating a total gross transaction amount of $312,636.

3     Overt Act No. 126:  On November 5, 2023, via text message,

4 defendant HAZRYAN sent himself a screenshot of a Quickbooks statement

5 for Freedom At Enterprise, Inc. from September 1 to September 30,

6 2023, indicating a total gross transaction amount of $213,951.30.

7     Overt Act No. 127:  On November 5, 2023, via text message,

8 defendant HAZRYAN sent himself a screenshot of a Quickbooks statement

9 for Freedom At Enterprise, Inc. from October 1 to October 31, 2023,

10 indicating a total gross transaction amount of $97,951.30.

11     Overt Act No. 128:  On November 6, 2023, defendant AGOPIAN

12 received an $8,000 wire from the Chase Bank Account into his Citibank

13 account.

14     Overt Act No. 129:  On November 7, 2023, defendant AGOPIAN

15 received a $20,000 wire from the Chase Bank Account into his Citibank

16 account.

17     Overt Act No. 130:  On November 7, 2023, defendant HAZRYAN

18 caused a transfer of $1,200 from the Chase Bank Account into a Zelle

19 account he controlled.

20     Overt Act No. 131:  On November 8, 2023, defendant BEZIK caused

21 a check for $21,975 from Freedom At Enterprise, Inc. to be cashed at

22 Tres Hermanos Market in Panorama City, California.

23     Overt Act No. 132:  On November 8, 2023, defendant HAZRYAN

24 caused a transfer of $700 from the Chase Bank Account into a Zelle

25 account he controlled.

26     Overt Act No. 133:  On November 9, 2023, defendant HAZRYAN

27 caused a transfer of $1,000 from the Chase Bank Account into a Zelle

28 account he controlled.

27

Overt Act No. 134:  On November 10, 2023, defendant HAZRYAN caused a transfer of $860 from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 135:  On November 11, 2023, via text messages and using coded language, a co-conspirator ("CC-4") asked defendant HAZRYAN for documentation CC-4 could provide the bank relating to Freedom At Enterprise, Inc. to support a dispute claim.

Overt Act No. 136:  On November 14, 2023, defendant AGOPIAN caused a $20,000 wire from the Chase Bank Account to be sent to his Citibank account.

Overt Act No. 137:  On November 16, 2023, defendant BEZIK caused a check for $8,595 from Freedom At Enterprise, Inc. to be cashed at A to Z.

Overt Act No. 138:  On November 16, 2023, defendant HAZRYAN caused a transfer of $1,000 from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 139:  On November 17, 2023, defendant HAZRYAN caused a transfer of $2,000 from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 140:  On November 19, 2023, defendant HAZRYAN saved a photograph of an email from Wells Fargo Bank regarding a dispute to a charge to Freedom At Enterprise, Inc. for $10,400 onto his iPhone 8.

Overt Act No. 141:  On November 20, 2023, defendant HAZRYAN caused a transfer of $380 from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 142:  On November 20, 2023, defendant HAZRYAN caused a transfer of $760 from the Chase Bank Account into a Zelle account he controlled

Overt Act No. 143:  On November 22, 2023, defendant HAZRYAN saved a photograph of a check payable to defendant SEDANO dated November 20, 2023, for $6,050, onto his iPhone 8.

Overt Act No. 144:  On November 22, 2023, defendant HAZRYAN saved a photograph of a check payable to defendant SEDANO dated November 21, 2023, for $5,150 onto his iPhone 8.

Overt Act No. 145:  On November 20, 2023, via text message using coded language, defendant HAZRYAN sent CC-3 a $28,150 invoice from Freedom At Enterprise Inc. for an individual bearing the initials Y.H. at Johnny and Son Trucking Inc with an email address of "Abodispatch@gmail.com."

Overt Act No. 146:  On November 21, 2023, via text message using coded language in Armenian, defendant HAZRYAN asked CC-3 for his email, to which CC-3 replied "abodispatch@gmail.com."

Overt Act No. 147:  On November 21 and November 22, 2023, defendants HAZRYAN and STEPANYAN exchanged email messages to make it falsely appear that Freedom At Enterprise, Inc. had canceled moving services that defendant STEPANYAN had booked in connection with a $29,450 invoice.

Overt Act No. 148:  On November 22, 2023, defendants HAZRYAN and SEDANO exchanged email messages to make it falsely appear that Freedom At Enterprise, Inc. had canceled moving services that defendant SEDANO had booked in connection with a $14,185 invoice.

Overt Act No. 149:  On November 22, 2023, defendant HAZRYAN and CC-3 exchanged email messages to make it falsely appear that Freedom

29

At Enterprise, Inc. had canceled moving services that CC-3 had booked
in connection with a $28,150 invoice.

Overt Act No. 150:  On November 22, 2023, defendant SEDANO
caused a check for $5,150 from Freedom At Enterprise, Inc. to be
deposited into a Chase Bank account.

Overt Act No. 151:  On November 22, 2023, defendant SEDANO
caused a check for $6,050 from Freedom At Enterprise, Inc. to be
deposited into a Bank of Montreal bank account.

Overt Act No. 152:  On November 22, 2023, defendant HAZRYAN
caused a transfer of $570 from the Chase Bank Account into a Zelle
account he controlled.

Overt Act No. 153:  On November 22, 2023, defendant AGOPIAN
caused a $10,000 wire to be sent from the Chase Bank Account to his
Citibank account.

Overt Act No. 154:  On November 23 and November 24, 2023,
defendants HAZRYAN and SEDANO exchanged email messages to make it
falsely appear that Freedom At Enterprise, Inc. had canceled moving
services that defendant SEDANO had booked in connection with a
$12,100 invoice.

Overt Act No. 155:  On November 24, 2023, defendant HAZRYAN
caused a transfer of $2,400 from the Chase Bank Account into a Zelle
account he controlled.

Overt Act No. 156:  On November 24, 2023, defendant HAZRYAN
saved a photograph of an invoice for $5,463 dated November 13, 2023,
from Freedom At Enterprise, Inc. onto his iPhone 8.

Overt Act No. 157:  On November 25, 2023, defendant HAZRYAN
saved a photograph of an invoice for $5,463 from Freedom At
Enterprise, Inc. onto his iPhone 8.

30

Overt Act No. 158:  On November 25, 2023, defendant HAZRYAN saved a photograph of an invoice for $7,956 dated November 11, 2023, from Freedom At Enterprise, Inc. onto his iPhone 8.

Overt Act No. 159:  Between November 25, 2023, and November 27, 2023, defendant HAZRYAN caused $1,300 to be transferred from the Chase Bank Account into a Zelle account he controlled.

Overt Act No. 160:  On November 30, 2023, defendant HAZRYAN saved a photograph of an invoice for $14,250 dated November 16, 2023, from Freedom At Enterprise, Inc. onto his iPhone 8.

Overt Act No. 161:  On December 7, 2023, via text message using coded language, defendant HAZRYAN requested that CC-4 relay to the owner of the credit card that she should permit a transaction charged by him to go through.

**NBA Holdings, LLC Amazon Cargo Theft Scheme**

Overt Act No. 162:  On November 17, 2015, defendant BEZIK filed Articles of Organization for Sierra Transportation Services, LLC, registering it as a limited liability company with the California Secretary of State.

Overt Act No. 163:  On December 4, 2018, a co-conspirator ("CC-5") filed an amendment to the Articles of Organization for Sierra Transportation Services, LLC, changing its name to NBA Holdings, LLC and claiming that it was an interior and exterior design business.

Overt Act No. 164:  On July 15, 2021, CC-5 opened a business checking account at Bank of America (ending in -1669), listing CC-5 as the accountholder.

1    Overt Act No. 165:  On July 20, 2021, CC-5 opened a business

2  checking account at Bank of America (ending in -0244), listing CC-5

3  as the accountholder.

4    Overt Act No. 166:  On July 15, 2021, defendant BEZIK registered

5  NBA Holdings, LLC with Amazon as a cargo relay carrier.

6    Overt Act No. 167:  On October 3, 2021, NBA Holdings, LLC booked

7  a contracted route to transport goods from a distribution center

8  located in City of Industry, California to the Amazon fulfillment

9  warehouse located in Lacey, Washington.

10    Overt Act No. 168:  On October 5, 2021, a driver associated with

11  NBA Holdings, LLC ("CC-6") arrived at the City of Industry

12  distribution center.

13    Overt Act No. 169:  On October 5, 2021, CC-6 departed from the

14  City of Industry distribution center with an Amazon trailer,

15  including approximately 980 Elite Gourmet Toasters collectively

16  valued at approximately $28,096.60.

17    Overt Act No. 170:  On October 8, 2021, CC-6 arrived at the

18  Lacey warehouse approximately three days after the scheduled arrival

19  date with the 980 toasters missing.

20    Overt Act No. 171:  On November 5, 2021, NBA Holdings, LLC

21  booked a contracted route to transport goods from a distribution

22  center located in Lynwood, California to an Amazon fulfillment

23  warehouse located in Aurora, Colorado.

24    Overt Act No. 172:  On November 8, 2021, a driver associated

25  with NBA Holdings, LLC ("CC-7") arrived at the Lynwood distribution

26  center.

27    Overt Act No. 173:  On November 9, 2021, CC-7 departed from the

28  Lynwood distribution center with an Amazon trailer, including, among

other items, approximately 534 Android Smart TVs collectively valued
at approximately $104,845.56.

Overt Act No. 174:  On November 15, 2021, CC-7 arrived at the
Aurora warehouse approximately four days after the scheduled arrival
date with the 534 Android Smart TVs missing.

Overt Act No. 175:  On February 6, 2022, defendant ARTUNI caused
a $5,000 transfer from NBA Holdings, LLC to be sent to a Zelle
account in the name of his significant other and controlled by him.

Overt Act No. 176:  On March 24, 2022, defendant ARTUNI caused a
$2,500 transfer from NBA Holdings, LLC to be sent to a Zelle account
in the name of his significant other and controlled by him.

Overt Act No. 177:  On April 27, 2022, defendant KAZARYAN caused
a $20,000 wire from NBA Holdings, LLC to be sent to a U.S. Bancorp
("U.S. Bank") account he controlled.

Overt Act No. 178:  On September 9, 2022, defendant KAZARYAN
caused a check for $5,000 from NBA Holdings, LLC to be deposited into
a U.S. Bank account in his father's name.

Overt Act No. 179:  On September 13, 2022, defendant KAZARYAN
caused a transfer of $1,000 from NBA Holdings, LLC to a Zelle account
he controlled.

Overt Act No. 180:  On September 13, 2022, defendant KAZARYAN
caused a transfer of $5,000 from NBA Holdings, LLC to a Zelle account
he controlled.

Overt Act No. 181:  On September 20, 2022, defendant KAZARYAN
caused a check for $3,500 from NBA Holdings, LLC to be deposited into
a U.S. Bank account in his father's name.

1    <u>Overt Act No. 182:</u>  On September 21, 2022, defendant KAZARYAN

2 caused a check for $6,362 from NBA Holdings, LLC to be deposited into

3 a U.S. Bank account in his father's name.

4    <u>Overt Act No. 183:</u>  On September 27, 2022, defendant BEZIK

5 caused a check for $10,000 from NBA Holdings, LLC to be deposited.

6    <u>Overt Act No. 184:</u>  On October 21, 2022, defendant KAZARYAN

7 caused a check for $3,500 from NBA Holdings, LLC to be deposited into

8 a U.S. Bank account in his father's name.

9    <u>Overt Act No. 185:</u>  On October 25, 2022, defendant ARTUNI caused

10 a $5,000 transfer from NBA Holdings, LLC to be sent to a Zelle

11 account in the name of his significant other and controlled by him.

12    <u>Overt Act No. 186:</u>  On October 27, 2022, defendant BEZIK

13 received a $54,000 wire from NBA Holdings, LLC into a Comerica Bank

14 account he controlled.

15    <u>Overt Act No. 187:</u>  On November 2, 2022, defendant BEZIK

16 received a $86,000 wire from NBA Holdings, LLC into a Comerica Bank

17 account he controlled.

18    <u>Overt Act No. 188:</u>  On November 7, 2022, defendant KAZARYAN

19 caused a check for $8,000 from NBA Holdings, LLC to be deposited into

20 a U.S. Bank account in his father's name.

21    <u>Overt Act No. 189:</u>  On November 30, 2022, defendant BEZIK

22 received a $46,000 wire from NBA Holdings, LLC into a Comerica Bank

23 account he controlled.

24    <u>Overt Act No. 190:</u>  On December 1, 2022, defendant KAZARYAN

25 caused a check for $4,000 from NBA Holdings, LLC to be deposited into

26 a U.S. Bank account in his father's name.

27

28

Overt Act No. 191:  On January 10, 2023, defendant KAZARYAN
caused a check for $3,500 from NBA Holdings, LLC to be deposited into
a U.S. Bank account in his father's name.

Overt Act No. 192:  On January 31, 2023, defendant BEZIK
received a $30,000 wire from NBA Holdings, LLC into a Comerica Bank
account he controlled.

Overt Act No. 193:  On February 1, 2023, defendant KAZARYAN
caused a transfer of $2,800 from NBA Holdings, LLC to a Zelle account
he controlled.

Overt Act No. 194:  On February 1, 2023, defendant AGOPIAN
received $40,000 wire from NBA Holdings, LLC into his Citibank
account.

Overt Act No. 195:  On February 6, 2023, defendant ARTUNI caused
a $5,000 transfer from NBA Holdings, LLC to be sent to a Zelle
account in the name of his significant other and controlled by him.

Overt Act No. 196:  On February 13, 2023, defendant BEZIK
received a $53,000 wire from NBA Holdings, LLC into a Comerica Bank
account he controlled.

Overt Act No. 197:  On February 21, 2023, defendant AGOPIAN
received an $80,000 wire from NBA Holdings, LLC into his Citibank
account.

Overt Act No. 198:  On or about February 23, 2023, defendant
ARTUNI caused a $5,000 transfer from NBA Holdings, LLC to be sent to
a Zelle account in the name of his significant other and controlled
by him.

Overt Act No. 199:  On March 9, 2023, defendant BEZIK received a
$15,000 wire transfer from NBA Holdings, LLC into a Comerica Bank
account he controlled.

1      <u>Overt Act No. 200:</u>  On April 7, 2023, defendant BEZIK received

2 an $18,500 wire transfer from NBA Holdings, LLC into a Comerica Bank

3 account he controlled.

4      <u>Overt Act No. 201:</u>  On May 3, 2023, defendant BEZIK received a

5 $47,000 wire transfer from NBA Holdings, LLC into a Comerica Bank

6 account he controlled.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            COUNT TWO

                    [18 U.S.C. §§ 1959(a)(3), 2]

        [DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, AND SEDANO]

    27.  On or about July 7, 2023, in Los Angeles County, within the
Central District of California, defendants ARTUNI, HAZRYAN,
STEPANYAN, and SEDANO, and others known and unknown to the Grand
Jury, each aiding and abetting the others, for the purpose of
maintaining and increasing position in the Artuni Enterprise, an
enterprise engaged in racketeering activity, unlawfully and knowingly
assaulted Victim 4 with a dangerous weapon and assaulted Victim 4
resulting in serious bodily injury to Victim 4, in violation of
California Penal Code Sections 245(a)(2) and 31.

COUNT THREE

[18 U.S.C. §§ 1959(a)(5), 2]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, AND SEDANO]

28.  On or about July 7, 2023, in Los Angeles County, in the Central District of California, defendants ARTUNI, HAZRYAN, STEPANYAN, and SEDANO, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, attempted to murder Victim 4, in violation of California Penal Code Sections 664/187(a).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FOUR

[18 U.S.C. §§ 1959(a)(5), 2]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, AND SEDANO]

29.  On or about July 7, 2023, in Los Angeles County, in the
Central District of California, defendants ARTUNI, HAZRYAN,
STEPANYAN, and SEDANO, and others known and unknown to the Grand
Jury, each aiding and abetting the others, for the purpose of
maintaining and increasing position in the Artuni Enterprise, an
enterprise engaged in racketeering activity, attempted to murder
Victim 5, in violation of California Penal Code Sections 664/187(a).

COUNT FIVE

[18 U.S.C. § 1349]

[DEFENDANTS AGOPIAN, HAZRYAN, STEPANYAN, BEZIK, AND SEDANO]

A.    THE OBJECTS OF THE CONSPIRACY

30.    Beginning no later than July 8, 2015, and continuing to at least on or about December 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants AGOPIAN, HAZRYAN, STEPANYAN, BEZIK, and SEDANO, together with others known and unknown to the Grand Jury, conspired to commit:

a.    Wire Fraud, in violation of Title 18, United States Code, Section 1343; and

b.    Bank Fraud, in violation of Title 18, United States Code, Section 1344(1).

B.    MANNER AND MEANS OF THE CONSPIRACY

31.    The objects of the conspiracy were to be accomplished, in substance, as follows:

a.    A co-conspirator ("CC-2") would incorporate Freedom At Enterprise, Inc. in the State of Pennsylvania and then reincorporate it in the State of California.

b.    CC-2 would open a business checking account for Freedom At Enterprise, Inc. at JPMorgan Chase Bank, whose accounts were then insured by the Federal Deposit Insurance Corporation (the "Chase Bank Account"), designating CC-2 as the account owner.

c.    Defendant HAZRYAN and CC-2 would maintain and control the Chase Bank Account.

d.    Using the Chase Bank Account, defendant HAZRYAN and CC-2 would process credit card payments from willing participants, including defendants STEPANYAN and SEDANO, and others known and

40

1  unknown to the Grand Jury, to pay for purported moving services

2  provided by Freedom At Enterprise, Inc.  In reality, as defendants

3  HAZRYAN, STEPANYAN, and SEDANO, CC-2, and the other cardholders knew,

4  Freedom At Enterprise, Inc. provided no moving services, and the

5  credit cards were used to transfer funds from the credit card issuers

6  -- which were FDIC-insured -- into the Chase Bank Account.

7          e.    Once credit card payments were made to the Chase Bank

8  Account, defendants AGOPIAN, HAZRYAN, BEZIK, and SEDANO, CC-2, and

9  others known and unknown to the Grand Jury, would drain the Chase

10  Bank Account by (i) issuing checks, which were later deposited into

11  different bank accounts or cashed; (ii) transferring the funds to a

12  linked, external account; or (iii) wiring the money to an external

13  account for the benefit of the co-conspirators and others.

14          f.    To maintain the scheme and maximize its profitability,

15  the cardholders would dispute the transactions with Freedom At

16  Enterprise, Inc. with the credit card issuers in order to have the

17  charges removed from their balances.

18  C.   OVERT ACTS

19       32.   In furtherance of the conspiracy and to accomplish its

20  object, defendants AGOPIAN, HAZRYAN, STEPANYAN, BEZIK, and SEDANO,

21  and others known and unknown to the Grand Jury, committed various

22  overt acts in Los Angeles County, within the Central District of

23  California, and elsewhere, including, but not limited to, Overt Acts

24  99 to 161 of Count One of this Indictment, which are realleged here.

25

26

27

28

41

COUNT SIX

[18 U.S.C. § 371]

[DEFENDANTS ARTUNI, AGOPIAN, KAZARYAN, AND BEZIK]

A.    THE OBJECT OF THE CONSPIRACY

33.    Beginning no later than on or about November 17, 2015, and continuing to at least in or around May 2023, within the Central District of California, and elsewhere, defendants ARTUNI, AGOPIAN, KAZARYAN, and BEZIK, conspired with each other and others known and unknown to the Grand Jury to commit Theft from Interstate and Foreign Shipment, in violation of Title 18, United States Code, Section 659.

B.    MANNER AND MEANS OF THE CONSPIRACY

34.    The object of the conspiracy was to be accomplished, in substance, as follows:

a.    Defendant BEZIK would file Articles of Organization for Sierra Transportation Services, LLC as a limited liability company with the California Secretary of State.

b.    A co-conspirator ("CC-5") would file an amendment to the Articles of Organization to change Sierra Transportation Services, LLC's name to NBA Holdings, LLC.

c.    CC-5 would open two bank accounts with Bank of America for NBA Holdings, LLC, listing CC-5 as the account signer.

d.    Defendant BEZIK would register NBA Holdings, LLC with Amazon.com, Inc. as a relay carrier and act as the administrator.

e.    Using NBA Holdings, LLC, defendant BEZIK would obtain contracted freight routes from the Amazon Relay Board to transport goods purchased by Amazon from the manufacturers' designated distribution centers to Amazon-designated fulfillment or warehouse centers.

42

f.    Drivers, sometimes including defendant BEZIK himself, would pick the Amazon shipments up from the designated distribution centers but would not deliver them to the Amazon-designated fulfillment or warehouse centers.  Instead, they would bring the goods to a "warehouse" maintained and controlled by defendant BEZIK and others known and unknown to the Grand Jury.

g.    Co-conspirators would enrich themselves by stealing and taking possession of the Amazon merchandise, valued at $1,000 or more, which constituted an interstate and foreign shipment of freight and property, for both personal use and resale and profit.

h.    Defendant BEZIK would use one of the NBA Holdings, LLC Bank of America accounts to pay defendants ARTUNI, AGOPIAN, and KAZARYAN, himself, and others known and unknown to the Grand Jury, with the proceeds from the stolen Amazon goods.

C.    OVERT ACTS

35.    In furtherance of the conspiracy and to accomplish its object, defendants ARTUNI, AGOPIAN, KAZARYAN, and BEZIK, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, Overt Acts 162 to 201 as set forth in Count One of this Indictment, which are realleged and incorporated here.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              COUNT SEVEN

                       [18 U.S.C. § 922(g)(1)]

                  [DEFENDANTS STEPANYAN AND SEDANO]

     36.  Beginning on a date unknown and continuing until on or
about December 12, 2023, defendants STEPANYAN and SEDANO knowingly
possessed firearms and ammunition, each in and affecting interstate
and foreign commerce, including, but not limited to, the following:
///

**Firearms**

| Make | Model | Caliber | Type | Serial No. |
|------|-------|---------|------|-----------|
| Stag Arms | STAG-15 | 5.56mm | Rifle | 110979 |
| Century Arms | C39v2 | 7.62x39mm | Rifle | C39P2A01084 |
| Izhmash | Saiga | .223 Remington | Rifle | H04161419 |
| Ruger | American | 6.5 Creedmoor | Rifle | 690876968 |
| Glock | 23 | .40 | Pistol | LLM670 |
| Charter Arms | Bulldog | .44 SPL | Revolver | 22C03482 |
| Glock | 20 | 10mm Auto | Pistol | BNAV439 |
| Taurus | G3 | 9x19mm | Pistol | AAL034433 |
| Glock | 29 Gen4 | 10mm Auto | Pistol | BRRT964 |
| Glock | 43X | 9x19mm | Pistol | BLUA713 |
| CZ | P-10S | 9x19mm | Pistol | UC11926 |
| Taurus | 605 | .357 Magnum | Revolver | TI62464 |
| Ruger | LCP | .380 Auto | Pistol | 371851421 |
| Glock | 21 | .45 Auto | Pistol | KDK598 |
| Glock | 17L | 9x19mm | Pistol | NA436 |
| S/S Inc. | Street Sweeper | 12 gauge | Shotgun/Destructive Device | SH1292 |

**Ammunition**

| No. of Rounds | Make | Caliber |
|---------------|------|---------|
| 10 | FN Herstal/Fiocchi | 5.7x28mm |
| 21 | FN Herstal/Fiocchi | 5.7x28mm |
| 150 | FN Herstal/Fiocchi | 5.7x28mm |
| 77 | Barnaul Cartridge Works | 9mm Luger |

45

| 59 | Sig Sauer | .380 Auto |
|----|-----------|-----------|
| 19 | Hornady | 7.62x39mm |
| 39 | Hornady | .357 Magnum |
| 11 | Hornady | 9mm Luger |
| 7 | Hornady | .45 Auto |
| 25 | Hornady | .38 Special |
| 1 | Federal Cartridge Company-CCI/Speer | .45 Auto +P |
| 50 | Fiocchi | .380 Auto |
| 6 | 205th Arsenal | .223 Remington |
| 8 | Ammo Incorporated/ Jagemann | 9mm Luger |
| 8 | Sellier & Bellot | 9x19mm |
| 26 | Remington | .22 short |

37.   Defendant STEPANYAN possessed such firearms and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a.   Identity Theft, in violation of California Penal Code Section 530.5(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA063152, on or about November 15, 2005;

b.   Use Access Account Info without Consent, in violation of California Penal Code Section 484E(d), in the Superior Court of the State of California, County of Los Angeles, Case Number GA063152, on or about November 15, 2005;

c.   Forge Official Seal, in violation of California Penal Code Section 472, in the Superior Court of the State of California,

46

County of Los Angeles, Case Number GA063152, on or about November 15, 2005;

        d.    Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11350(b), in the Superior Court of the State of California, County of Los Angeles, Case Number GA063152, on or about November 15, 2005;

        e.    Possess Concentrated Cannabis, in violation of California Health and Safety Code Section 11357(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA063152, on or about November 15, 2005;

        f.    Possession of a Narcotic Controlled Substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA068681, on or about February 23, 2007;

        g.    Possession of a Narcotic Controlled Substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA068258, on or about February 23, 2007;

        h.    Grand Theft, in violation of California Penal Code Section 487(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA068855, on or about March 12, 2007;

        i.    Petty Theft with a Prior Conviction, in violation of California Penal Code Section 666, in the Superior Court of the State of California, County of Los Angeles, Case Number GA068855, on or about March 12, 2007;

        j.    Petty Theft with a Prior Conviction, in violation of California Penal Code Section 666, in the Superior Court of the State

47

1  of California, County of Los Angeles, Case Number GA069586, on or

2  about July 3, 2007;

3          k.    Possession of a Narcotic Controlled Substance, in

4  violation of California Health and Safety Code Section 11350(a), in

5  the Superior Court of the State of California, County of Los Angeles,

6  Case Number GA069586, on or about July 3, 2007;

7          l.    Grand Theft, in violation of California Penal Code

8  Section 487(a), in the Superior Court of the State of California,

9  County of Los Angeles, Case Number GA075549, on or about November 13,

10 2009;

11         m.    Possession of a Narcotic Controlled Substance, in

12 violation of California Health and Safety Code Section 11350(a), in

13 the Superior Court of the State of California, County of Los Angeles,

14 Case Number GA075379, on or about January 13, 2009;

15         n.    Transport/Sell Narcotic Controlled Substance, in

16 violation of California Health and Safety Code Section 11352(a), in

17 the Superior Court of the State of California, County of Los Angeles,

18 Case Number GA086911, on or about October 3, 2012;

19         o.    Possession for Sale of a Narcotic Controlled

20 Substance, in violation of California Health and Safety Code Section

21 11351, in the Superior Court of the State of California, County of

22 Los Angeles, Case Number GA086911, on or about October 3, 2012;

23         p.    Possess Controlled Substance while Armed, in violation

24 of California Health and Safety Code Section 11370.1(a), in the

25 Superior Court of the State of California, County of Los Angeles,

26 Case Number GA086911, on or about October 3, 2012;

27         q.    Felon in Possession of a Firearm, in violation of

28 California Penal Code Section 29800(a)(1), in the Superior Court of

48

the State of California, County of Los Angeles, Case Number GA086911,
on or about October 3, 2012;

       r.  Felon in Possession of Ammunition, in violation of
California Penal Code Section 30305(a)(1), in the Superior Court of
the State of California, County of Los Angeles, Case Number GA086911,
on or about October 3, 2012;

       s.  Possess Controlled Substance, in violation of
California Health and Safety Code Section 11377(a), in the Superior
Court of the State of California, County of Los Angeles, Case Number
GA086911, on or about October 3, 2012;

       t.  Hit and Run: Death or Injury, in violation of
California Vehicle Code Section 20001(a), in the Superior Court of
the State of California, County of Los Angeles, Case Number GA087498,
on or about October 3, 2012;

       u.  Receiving a Stolen Vehicle, in violation of California
Penal Code Section 496D(a), in the Superior Court of the State of
California, County of Los Angeles, Case Number GA087498, on or about
October 3, 2012; and

       v.  Taking a Vehicle Without Consent, in violation of
California Vehicle Code Section 10851(a), in the Superior Court of
the State of California, County of Los Angeles, Case Number GA087498,
on or about October 3, 2012.

    38.  Defendant SEDANO possessed such firearms and ammunition
knowing that he had previously been convicted of at least one of the
following felony crimes, each punishable by a term of imprisonment
exceeding one year:

       a.  Vandalism, in violation of California Penal Code
Section 594(a), in the Superior Court of the State of California,

49

County of Los Angeles, Case Number GA069370, on or about May 17, 2007;

b.    Robbery, in violation of California Penal Code Section 211, in the Superior Court of the State of California, County of Los Angeles, Case Number LA057979, on or about February 29, 2008; and

c.    Vandalism, in violation of California Penal Code Section 594(a) with Gang Enhancement, in the Superior Court of the State of California, County of Los Angeles, Case Number GA081658, on or about February 23, 2011.

1              COUNT EIGHT

2          [18 U.S.C. § 922(g)(1)]

3          [DEFENDANT MANUKYAN]

4     39.   Beginning on a date unknown and continuing until on or

5   about December 12, 2023, defendant MANUKYAN knowingly possessed

6   firearms, namely, a Ruger, model 10/22, .22 LR caliber rifle, bearing

7   serial number 129-54711; a United States Carbine, model M1, .30

8   Carbine caliber rifle, bearing serial number AA33192; and a Sears,

9   Roebuck and Co., model 300, 20 gauge shotgun, bearing serial number

10  Q118168, each in and affecting interstate and foreign commerce.

11    40.   Defendant MANUKYAN possessed such firearms knowing that he

12  had previously been convicted of at least one of the following felony

13  crimes, each punishable by a term of imprisonment exceeding one year:

14         a.   Identity Theft, in violation of California Penal Code

15  Section 530.5(a), in the Superior Court of the State of California,

16  County of Los Angeles, Case Number GA089554, on or about January 9,

17  2014;

18         b.   Receiving Stolen Property, in violation of California

19  Penal Code Section 496(a), in the Superior Court of the State of

20  California, County of Los Angeles, Case Number GA089554, on or about

21  January 9, 2014; and

22         c.   Prohibited Person in Possession of Ammunition, in

23  violation of California Penal Code Section 30305(a)(1), in the

24  Superior Court of the State of California, County of Los Angeles,

25  Case Number GA111641, on or about February 14, 2023.

26

27

28

                          51

COUNT NINE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT ARAKELYAN]

41.  Beginning on a date unknown and continuing until on or about December 12, 2023, defendant ARAKELYAN knowingly possessed firearms, namely, a Glock, model 29 Gen4, 10mm Auto caliber pistol, bearing serial number BRRT964, and a Taurus, model G3, 9x19mm caliber pistol, bearing serial number AAL034433, each in and affecting interstate and foreign commerce.

42.  Defendant ARAKLEYAN possessed such firearms knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a.    Discharging a Firearm into an Inhabited Dwelling or Occupied Vehicle, in violation of California Penal Code Section 246, in the Superior Court of the State of California, County of Los Angeles, Case Number GA046510, on or about February 6, 2003;

b.    Distribution of Methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1),(b)(1)(A), in United States District Court, Eastern District of Pennsylvania, Case Number 2:06-cr-00226-AB-4, on or about October 6, 2008;

c.    Unlawful Use of a Communication Facility, in violation of Title 21, United States Code Section 843(b), in United States District Court, Eastern District of Pennsylvania, Case Number 2:06-cr-00226-AB-4, on or about October 6, 2008;

d.    Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(1),(b)(1)(A), in United States District

Court, Eastern District of Pennsylvania, Case Number 2:06-cr-00401-AB-1, on or about October 6, 2008; and

e.    Ownership or Possession of Firearm by Prohibited Person, in violation of Nevada Revised Statute 202.360.1, in the District Court of the State of Nevada, County of Clark, Case Number C-20-352231-1, on or about February 13, 2023.

1                              COUNT TEN

2                         [18 U.S.C. § 922(g)(1)]

3                          [DEFENDANT AGOPIAN]

4       43.   Beginning on a date unknown and continuing until on or

5  about April 11, 2025, defendant AGOPIAN, knowingly possessed firearms

6  and ammunition, namely, a Kel-Tec, model KSG, 12 gauge shotgun,

7  bearing serial number XXC224; a Kimber, model Custom TLE II, .45 ACP

8  caliber pistol, bearing serial number K707215; approximately 12

9  rounds of Winchester 12 gauge shotgun shells; and approximately seven

10  rounds of Federal Cartridge Company .45 Auto caliber ammunition, each

11  in and affecting interstate and foreign commerce.

12      44.   Defendant AGOPIAN possessed such firearms and ammunition

13  knowing that he had previously been convicted of at least one of the

14  following felony crimes, each punishable by a term of imprisonment

15  exceeding one year:

16            a.   Grand Larceny in the Third Degree, in violation of New

17  York Penal Law Section 155.35, in the Supreme Court of the State of

18  New York, County of New York, Case Number 04780-2014, on or about,

19  October 30, 2014; and

20            b.   Possession of a Forged Instrument in the Second

21  Degree, in violation of New York Penal Law Section 170.25, in the

22  Supreme Court of the State of New York, County of New York, Case

23  Number 04780-2014, on or about, October 30, 2014.

24

25

26

27

28

COUNT ELEVEN

[18 U.S.C. § 922(g)(5)(A)]

[DEFENDANT ARAKELYAN]

45.  Beginning on a date unknown, and continuing until on or about December 12, 2023, in Los Angeles County, within the Central District of California, defendant ARAKELYAN knowingly possessed firearms, namely, a Glock, model 29 Gen4, 10mm Auto caliber pistol, bearing serial number BRRT964 and a Taurus, model G3, 9x19mm caliber pistol, bearing serial number AAL034433, each in and affecting interstate and foreign commerce.

46.  Defendant ARAKELYAN possessed such firearms knowing that he was then an alien illegally and unlawfully in the United States.

COUNT TWELVE

[18 U.S.C. §§ 922(o)(1), 2]

[DEFENDANTS STEPANYAN AND SEDANO]

47.   Beginning on a date unknown and continuing until on or about December 12, 2023, in Los Angeles County, within the Central District of California, defendants STEPANYAN and SEDANO, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly possessed, and caused to be possessed, machineguns, as defined in Title 18, United States Code, Section 921(a)(24) and Title 26, United States Code, Section 5845(b), namely, the following items that were designed and intended solely and exclusively for use in converting a weapon into a machinegun: a 3D-printed machinegun conversion device; an auto sear attached to a Glock, model 21, .45 Auto caliber firearm; and an auto sear attached to a Glock, model 17L, 9x19mm Luger caliber firearm, which defendants STEPANYAN and SEDANO knew to be machineguns.

COUNT THIRTEEN THROUGH EIGHTEEN

[26 U.S.C. § 5861(d)]

[DEFENDANTS STEPANYAN AND SEDANO]

48.  Beginning on a date unknown and continuing until on or about December 12, 2023, in Los Angeles County, within the Central District of California, defendants STEPANYAN and SEDANO knowingly possessed the following firearms, each of which defendants STEPANYAN and SEDANO knew to be a firearm, a short-barreled rifle, and a firearm silencer, as defined in Title 26, United States Code, Section 5845(a)(3), (a)(7), and (c), and Title 18, United States Code, Section 921(a)(25), and which had not been registered to defendants STEPANYAN or SEDANO in the National Firearms Registration and Transfer Record, as required by Chapter 53, Title 26, United States Code:

| COUNT | DESCRIPTION |
|---|---|
| THIRTEEN | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| FOURTEEN | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| FIFTEEN | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| SIXTEEN | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| SEVENTEEN | A S/S Inc., Street Sweeper, 12 gauge shotgun/destructive device, bearing serial number SH1292 |
| EIGHTEEN | An AR-Style short-barreled rifle bearing no legitimate manufacturer's mark or serial number (commonly referred to as a "ghost gun") |

COUNT NINETEEN THROUGH TWENTY-THREE

[26 U.S.C. § 5861(i)]

[DEFENDANTS STEPANYAN AND SEDANO]

49.  Beginning on a date unknown and continuing until on or about December 12, 2023, in Los Angeles County, within the Central District of California, defendants STEPANYAN and SEDANO knowingly possessed the following firearms, each of which defendants STEPANYAN and SEDANO knew to be a firearm, a short-barreled rifle, and a firearm silencer, as defined in Title 26, United States Code, Section 5845(a)(3), (a)(7), and (c), and Title 18, United States Code, Section 921(a)(25), and which did not bear a serial number, as required by Chapter 53, Title 26, United States Code.

| COUNT | DESCRIPTION |
|---|---|
| NINETEEN | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| TWENTY | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| TWENTY-ONE | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| TWENTY-TWO | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| TWENTY-THREE | An AR-Style short-barreled rifle bearing no legitimate manufacturer's mark or serial number (commonly referred to as a "ghost gun") |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963]

1.    Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 1963, in the event of any defendant's conviction of the offense set forth in Count One of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)    Any interest the convicted defendant has acquired or maintained as a result of the offense;

(b)    Any interest in, security of, claim against, or property or contractual right of any kind affording a source or influence over, any enterprise which the convicted defendant has established, operated, controlled, conducted, or participated in the conduct of, as a result of the offense;

(c)    Any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection as a result of the offense; and

(d)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.    Pursuant to Title 18, United States Code, Section 1963(m), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof

(a) cannot be located upon the exercise of due diligence; (b) has

been transferred, sold to or deposited with a third party; (c) has

been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with

other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 981(a)(1)(C), 924(d) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal
Procedure, notice is hereby given that the United States of America
will seek forfeiture as part of any sentence, pursuant to Title 18,
United States Code, Sections 981(a)(1)(C), 924(d), and Title 28,
United States Code, Section 2461(c), in the event of any defendant's
conviction of the offenses set forth in Counts Two through Four of
this Indictment.

2.    Any defendant so convicted shall forfeit to the United
States of America the following:

(a)    All right, title, and interest in any and all
property, real or personal, constituting, or derived from, any
proceeds traceable to the offenses;

(b)    All right, title, and interest in any firearm or
ammunition involved in or used in any such offense; and

(c)    To the extent such property is not available for
forfeiture, a sum of money equal to the total value of the property
described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p),
as incorporated by Title 28, United States Code, Section 2461(c), any
defendant so convicted shall forfeit substitute property, up to the
value of the property described in the preceding paragraph if, as the
result of any act or omission of said defendant, the property
described in the preceding paragraph or any portion thereof (a)
cannot be located upon the exercise of due diligence; (b) has been
transferred, sold to, or deposited with a third party; (c) has been

placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with

other property that cannot be divided without difficulty.

1

FORFEITURE ALLEGATION THREE

2

[18 U.S.C. § 982]

3      1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 982(a)(2), in the event of any

7  defendant's conviction of the offense set forth in Count Five of this

8  Indictment.

9      2.    Any defendant so convicted shall forfeit to the United

10  States of America the following:

11          (a) All right, title and interest in any and all property,

12  real or personal, constituting, or derived from, any proceeds

13  obtained, directly or indirectly, as a result of the offense; and

14          (b) To the extent such property is not available for

15  forfeiture, a sum of money equal to the total value of the property

16  described in subparagraph (a).

17      3. Pursuant to Title 21, United States Code, Section 853(p), as

18  incorporated by Title 18, United States Code, Section 982(b), any

19  defendant so convicted shall forfeit substitute property, up to the

20  total value of the property described in the preceding paragraph if,

21  as the result of any act or omission of said defendant, the property

22  described in the preceding paragraph, or any portion thereof: (a)

23  cannot be located upon the exercise of due diligence; (b) has been

24  transferred, sold to or deposited with a third party; (c) has been

25  placed beyond the jurisdiction of the court; (d) has been

26  substantially diminished in value; or (e) has been commingled with

27  other property that cannot be divided without difficulty.

28

1          FORFEITURE ALLEGATION FOUR

2        [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3      1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 981(a)(1)(C) and Title 28, United States

7  Code, Section 2461(c), in the event of any defendant's conviction of

8  the offense set forth in Count Six of this Indictment.

9      2.   Any defendant so convicted, shall forfeit to the United

10 States of America the following:

11          (a)  All right, title and interest in any and all property,

12 real or personal, constituting, or derived from, any proceeds

13 traceable to the offense; and

14          (b)  To the extent such property is not available for

15 forfeiture, a sum of money equal to the total value of the property

16 described in subparagraph (a).

17     3.   Pursuant to Title 21, United States Code, Section 853(p), as

18 incorporated by Title 28, United States Code, Section 2461(c), any

19 defendant so convicted shall forfeit substitute property, up to the

20 total value of the property described in the preceding paragraph if,

21 as the result of any act or omission of said defendant, the property

22 described in the preceding paragraph, or any portion thereof: (a)

23 cannot be located upon the exercise of due diligence; (b) has been

24 transferred, sold to or deposited with a third party; (c) has been

25 placed beyond the jurisdiction of the court; (d) has been

26 substantially diminished in value; or (e) has been commingled with

27 other property that cannot be divided without difficulty.

28

64

FORFEITURE ALLEGATION FIVE

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.     Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Seven through Twelve of this Indictment.

2.     Any defendant so convicted shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1        FORFEITURE ALLEGATION SIX

2        [26 U.S.C. § 5872, and 28 U.S.C. § 2461(c)]

3        1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 26,

6   United States Code, Section 5872 and Title 28, United States Code,

7   Section 2461(c), in the event of any defendant's conviction of the

8   offense set forth in any of Counts Thirteen through Twenty-Three of

9   this Indictment.

10       2.    Any defendant so convicted shall forfeit to the United

11  States of America the following:

12              (a)   All right, title, and interest in any firearm

13  involved in any such offense; and

14              (b)   To the extent such property is not available for

15  forfeiture, a sum of money equal to the total value of the property

16  described in subparagraph (a).

17              3.    Pursuant to Title 21, United States Code, Section

18  853(p), as incorporated by Title 28, United States Code, Section

19  2461(c), any defendant so convicted, shall forfeit substitute

20  property, up to the value of the property described in the preceding

21  paragraph if, as the result of any act or omission of the defendant,

22  the property described in the preceding paragraph or any portion

23  thereof (a) cannot be located upon the exercise of due diligence; (b)

24  has been transferred, sold to, or deposited with a third party; (c)

25  ///

26

27

28

has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with

other property that cannot be divided without difficulty.


                                        A TRUE BILL


                                        /S/
                                        _____
                                        Foreperson

BILAL A. ESSAYLI
United States Attorney

*Christina Shay*

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

JOSHUA O. MAUSNER
Assistant United States Attorney
Chief, Violent & Organized Crime
Section

LYNDSI ALLSOP
Assistant United States Attorney
Deputy Chief, Violent & Organized
Crime Section

KENNETH R. CARBAJAL
Assistant United States Attorney
Violent & Organized Crime Section